The **BABCOCK & WILCOX COMPANY,** Assignee of the Interference parties **Dungey** and **Frendberg, Plaintiff,**

v.

**FOSTER WHEELER CORPORATION,** Assignee of the Interference parties **Gorzegno, Weber** and **Pai, Defendants.**

**Civ. A. No. 174–69.**

United States District Court, D. New Jersey.

Civil Division.

Dec. 22, 1971.

Toner, Vanderbilt & Toner, by Roger L. Toner, Livingston, N. J., and Bryan, Parmelee, Johnson & Bollinger, by Roland T. Bryan, and Alphonse R. Noe, Stamford, Conn., for plaintiff.

Riker, Danzig, Scherer & Brown, by Frank J. Miele, Newark, N. J., and Pendleton, Neuman, Williams & Anderson, by Robert L. Austin, Chicago, Ill., and John Maier, III, Livingston, N. J., for defendants.

## OPINION

COOLAHAN, District Judge:

This is a motion under Rule 37, Fed. Rules Civ.Proc. to compel answers to certain questions propounded during depositions taken pursuant to ancillary discovery proceedings authorized by 35 U.S.C. § 24. This provision allows opponents before the Patent Office to obtain depositions in interference cases by leave of court. Foster Wheeler filed a patent application on May 27, 1964 for its steam generator. On April 13, 1965, Babcock & Wilcox filed a similar patent application. The Patent Office declared an interference and began its proceeding to determine the rightful patentee. Because the Patent Office Rules of Practice do not provide for pretrial discovery, the parties have come before this Court pursuant to 35 U.S.C. § 24. On June 3, 1970 this Court ordered Foster Wheeler to produce its co-inventors for depositions, and this order was renewed upon application by Babcock & Wilcox for sanctions for noncompliance exactly one year later.

■ Foster Wheeler appealed from the Court's order of June 3, 1970 and the order for discovery was affirmed by the Third Circuit on September 14, 1970. Babcock & Wilcox Co. v. Foster Wheeler Corp., 432 F.2d 385 (3d Cir. 1970). A fuller discussion of the procedural history of this case, not relevant to this motion, may be found there. Foster Wheeler later appealed the entry of this Court's discovery order of June 3, 1971. Babcock & Wilcox cross-appealed from the denial of sanctions under Rule 37. Further, Babcock & Wilcox sought a reversal of this Court's ruling that certain Foster Wheeler documents were subject to the attorney/client privilege and not discoverable. Foster Wheeler withdrew its appeal from the order entered on June 3, 1971 and proceeded ahead with discovery. The Babcock & Wilcox cross appeal for sanctions, and discovery, however, still remains before the Third Circuit. An order of a district Court allowing or denying discovery in proceedings ancillary to a patent interference case is clearly a final, appealable order under 28 U.S.C. § 1291. In re Natta, 410 F.2d 187 (3d Cir. 1969), cert. denied, Montecatini Edison SpA v. E I du Pont de Nemours & Co., 396 U.S. 836, 90 S.Ct. 95, 24 L. Ed.2d 87; Ochsner v. Millis, 382 F.2d 618 (6th Cir. 1967). Ordinarily, a party seeking review of a discovery order is asking for interlocutory relief, which means that appellate jurisdiction must be found in 28 U.S.C. § 1292(b). But in actions brought under 35 U.S.C. § 24, discovery is the entire object of the lawsuit, and an order denying or allowing discovery is therefore final and appealable.

■■ Foster Wheeler first contends that this Court has no jurisdiction presently to consider a motion compelling answers to questions propounded during depositions because of the appeal docketed before the Third Circuit. However, Foster Wheeler no longer contests the propriety of discovery by withdrawal of its appeal. As for the cross appeal by Babcock & Wilcox for sanctions, the only sanction open to it is the imposition of costs, and this certainly does not constitute the relief ultimately sought or to be denied. As the crux of the action here is discovery, this Court is not divested of jurisdiction to compel answers to questions propounded, while the Court of Appeals considers imposing costs for failure to comply with the June 3, 1970 discovery order. Similarly, the production of certain Foster Wheeler documents held subject to the attorney/client privilege is irrelevant to our consideration of proper discovery by deposition. In its purest essence, this is, after all, a question of subject matter jurisdiction. The subject matter of those issues on appeal and the motion to compel answers before this Court now are unrelated. Neither of the issues before the Court of Appeals bears even indirectly upon the outcome of the motion herein decided, and the Court sees no reason why both matters cannot be pursued simultaneously. As Professor Moore states:

> The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal.

> . . . . .

> The filing of a timely and effective notice of appeal divests the district court of jurisdiction only with respect to the judgment brought up for review by the appeal. . . . [W]here an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal.

9 Moore's Federal Practice ¶ 203.11 at 734, 739 (2d ed. 1971) (footnotes omitted.) Cf. Cleveland-Cliffs Iron Co. v. Grosse Ile Bridge Co., 239 F.Supp. 872, 886 (E.D.Mich.1964); Meltzer v. Hotel Corporation of America, 25 F.R.D. 62,

68 (N.D.Ohio 1960). By withdrawing its appeal challenging the propriety of discovery, Foster Wheeler has reinvested this Court with the jurisdiction to consider the questions raised by the taking of depositions.

 This motion to compel answers proceeds from a series of questions propounded to Walter Gorzegno, a co-inventor of the Foster Wheeler steam generator. In essence, counsel for Babcock & Wilcox tried to determine whether Gorzegno's claims as an inventor corresponded to Foster Wheeler's claims before the Patent Office. However, the questioning hardly moved further than Count 1 of the Foster Wheeler patent claim, because Gorzegno insisted that both the Foster Wheeler and the Babcock & Wilcox patent claims were too broad for the invention contested before the Patent Office. Counsel made repeated attempts to pin down Gorzegno on the simple issue of his claim of invention, but his efforts were thwarted by Gorzegno's contentions that the construction of counts in the patent claim was essentially a legal matter which he, an engineer, was incompetent to answer decisively. The Court now refers to the deposition transcript for illumination.

Q1064 Can you read that claim [Count 1] to describe a UP–9 or a UP–12 or a UP–15 circuit construction?

. . . . . .

A I will read Count 1 again.

The claim is so broad as to cover the up-up circuitry or the circuitry in this other patent in interference.

. . . . . .

Q1066 Does that claim constitute what you consider to be your invention as of the time you made it?

A This claim reads on this invention, and as I said before, I consider the specifications of this invention, to my mind, to properly define this invention and no other invention.

It's quite possible . . . to sit down with a piece of paper and come up with four or five furnace arrangements using Benson circuits . . . . . I don't see how you can generically say that a given arrangement of Benson circuit, because it exists, prevents anyone else from building any variation of that circuit at all. However, this claim is so broad it would tend to do that.

. . . . . .

In my opinion, and this is again without being a patent attorney, these claims in the interference are so broad that as to final outcome I don't think they would stand up in a court of law

. . . .

Q1069 But, at least, from your viewpoint you disclaim them as being your invention, isn't that right?

. . . . . .

I want you to read Claim 1. You have said that that is not your claim, isn't that right? You disclaim that one; you do not claim that as your invention, claim Count 1?

A I did not claim—I did not say that. I said this claim is so broad, it reads on this invention, but to me the invention that I consider an invention is in the actual descriptive embodiment in all its details [i. e., the engineering specifications], and I think this claim is so broad it could cover anything.

Q1071 So that to the extent its broader than your description you disclaim it, is that right?

. . . . . .

Q1072 And I'm asking you whether or not you claim your invention is as broad as Count 1. [The witness is advised not to answer the question. There follows a discussion of other Counts.]

Q1086 My question to you is: Do you claim that you are a co-inventor of claims of that scope?

A I claim that I am a co-inventor of what's specified in the specifications of this patent and no other invention that I care to co-invent, although, as I added before, you may sit down and if you want to build such a boiler, you can arrange an awful lot of variations of Benson Circuits within a furnace envelope.

Babcock & Wilcox regards these answers as nonresponsive and moves under Rule 37, Fed.Rules Civ.Proc. for an order compelling sufficient answers. Foster Wheeler replies that Gorzegno has already answered the questions put to him, albeit not to the liking of the examiner, and that the witness should not be compelled to frame his answers to the satisfaction of the examiner so as to distort his testimony prejudicially.

Actually, Gorzegno's apparent distaste for Foster Wheeler patent draftsmanship is the source of the trouble here. Putting aside his attitude toward the Babcock & Wilcox claims, Gorzegno is convinced that the Foster Wheeler claims before the Patent Office are overly broad. In other words, the counts drafted by lawyers do not conform in his mind to his own engineering specifications. Whether the Foster Wheeler and/or the Babcock & Wilcox patent claims are in fact too broad either because they are too vague or contain prior art will be a matter for the Patent Office to determine. Gorzegno need not have concerned himself with this issue. The question put to him over and over again is quite simple: Does he or does he not claim to have coinvented all that is contained in Count 1? If the answer is no, Foster Wheeler will obviously be obliged to redraft its claim or lose the interference action before the Patent Office. If the answer is yes, the examiner will undoubtedly proceed to ask the witness the source of his ideas. He might also want to explore possible differences between the Foster Wheeler and Babcock & Wilcox claims, if any.

Although the point was once in doubt, it is now a uniformly observed rule that a party obtaining discovery in patent infringement proceedings may require its opponent to state exactly what its claims are. Carrier Manufacturing Co. v. Rex Chainbelt, Inc., 281 F.Supp. 717 (E.D. Wis.1968); Trabon Engineering Corp. v. Eaton Manufacturing Co., 37 F.R.D. 51 (N.D.Ohio 1964); Textrol, Inc. v. D. C. Oviatt Co., 37 F.R.D. 27 (N.D.Ohio 1964); Lee v. Electric Products Co., 37 F.R.D. 42 (N.D.Ohio 1963); Olsen v. St. Anthony Machine Products Co., 18 F.R. D. 313 (D.Minn.1955); Drake v. Pycope, Inc., 96 F.Supp. 331 (N.D.Ohio 1951). An inventor may be called upon to describe precise similarities between competing devices. In Meese v. Eaton Manufacturing Co., 35 F.R.D. 162 (N. D.Ohio 1964), the court commented upon this discovery right by saying that it could think "of no one *more qualified* than the inventors to express [an] opinion as to what constitutes theft of their inventiveness." *Id.* at 166. See also Montecatini Edison, SpA v. Rexall Drug & Chemical Co., 288 F.Supp. 486 (D. Del.1968). And particularity in answers is especially required where the defendant pleads the invalidity of plaintiff's patent, either by challenging the breadth of the patent or by asserting prior art and public use. Liquidometer Corp. v. Capital Airlines, Inc., 24 F.R.D. 319 (D. Del.1959); Gellman v. Friedman, 143 F.Supp. 383 (S.D.N.Y.1956); International Nickel Co., Inc. v. Ford Motor Co., 15 F.R.D. 392 (S.D.N.Y.1954); Gagen v. Northam Warren Corp., 15 F.R.D. 44 (S.D.N.Y.1953); Martin-Parry Corp. v. C. A. Bader Co., 16 F.R.D. 465 (D.Conn. 1953). Questions asking a party to compare his patented process with that represented by a drawing presented by his opponent have likewise been held proper. Schwartz v. Howard Hosiery Co., 27 F.Supp. 443 (E.D.Pa.1939).

While these decisions relate to the taking of interrogatories under Rule 33, Fed.Rules Civ.Proc., in patent infringe-

ment cases begun in federal district court, I see no difference in the application of the rationale to discovery by deposition under Rule 30 in ancillary proceedings pursuant to 35 U.S.C. § 24 in interference proceedings.* Before the issue of infringement or interference can be reached, we must first determine the claims of the parties. Mr. Gorzegno may feel, quite properly, perhaps, that his engineering specifications were inexactly translated into the various counts submitted to the Patent Office by the Foster Wheeler legal staff. However so, this intracorporate misunderstanding should not obfuscate the contest between Foster Wheeler and Babcock & Wilcox. Gorzegno is able to understand the extent of the invention asserted by the Foster Wheeler claim. He may properly be questioned as to his role as a co-inventor of all that has been forwarded by Foster Wheeler as its invention.

Let an appropriate order be submitted.

---

* Discovery procedure in proceedings ancillary to interference cases is governed by the Federal Rules of Civil Procedure. 35 U.S.C. § 24; In re Natta, 388 F.2d 215 (3d Cir. 1968). The sentiment favoring full discovery in infringement cases is highly persuasive, therefore, in interference cases as well. In each instance we begin by setting out the competing claims as precisely as possible.